IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KATHRYN SCHULTZ, MARLYS E.      )
REZAIAN, KATHERINE A.          )
CUMMINS, and CONNIE L.         )
NELSON,                        )
                               )
            Plaintiffs,        )          4:08CV3086
                               )
        v.                     )
                               )
WINDSTREAM COMMUNICATIONS,      )          MEMORANDUM AND ORDER
Inc.,                          )
                               )
            Defendant.         )
                               )

        Pending before me are the cross-motions for summary judgment
filed by the defendant Windstream Communications, Inc,
("Windstream"), (filing no. 53), and the plaintiffs, (filing No.
56).  For the reasons discussed below, the defendant's motion for
summary judgment will be granted, and the plaintiffs' motion will
be denied.

STANDARD OF REVIEW

        A motion for summary judgment is "properly regarded not as a
disfavored procedural shortcut, but rather as an integral part of
the Federal Rules as a whole, which are designed to secure the
just, speedy and inexpensive determination of every action."
Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  In response
to the moving party's evidence, the opponent's burden is to "come
forward with specific facts showing that there is a genuine issue
for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).  "[T]here is no issue for
trial unless there is sufficient evidence favoring the nonmoving
party for a jury to return a verdict for that party." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing the
> absence of a genuine issue of material fact and an
> entitlement to judgment as a matter of law[,] . . . the non-
> moving party may not rest on the allegations of his
> pleadings, but must set forth specific facts, by affidavit
> or other evidence, showing that a genuine issue of material
> fact exists.

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003)(internal
citations omitted)).

STATEMENT OF UNDISPUTED FACTS

The parties have presented the case primarily on stipulated
facts.  The relevant undisputed facts are as follows:

On December 6, 2006, Windstream announced that it was
realigning certain customer service, engineering and information
technology functions throughout Windstream.  Filing No. 52, at
CM/ECF p. 3, ¶¶ 12-14.  As a result of this realignment, fifteen
employees from the Assignment Organization in Lincoln, Nebraska
were notified on December 6, 2006 that they would be laid off on
April 13, 2007.  Filing No. 52, at CM/ECF p. 3, ¶¶ 12-14.  The
plaintiffs were among the employees laid off on April 13, 2007.[1]

As to plaintiffs Katherine Cummings ("Cummings"), Kathryn D.
Schultz ("Schultz"), and Marlys E. Rezaian ("Rezaian"), as of
April 13, 2007:

---

[1]The layoff itself is not at issue in this case.  The
plaintiffs do not contend their selection for layoff was
unlawful, and stipulate they were selected for layoff based on a
neutral, non-discriminatory, nonretaliatory basis.  Filing No.
52, at CM/ECF p. 3, ¶¶ 15-16.

2

- Cummins had worked for Windstream for 29 years and was 52;

- Rezaian had worked for Windstream for 28 years and was 53; and

- Shultz had worked for Windstream for 28 years and was 50.

See filing no. 52, at CM/ECF p. 1, ¶ 1.

Plaintiffs Cummins, Rezaian, and Schultz were therefore entitled to retirement benefits under the "Early Retirement-50/25" provision of the Windstream Pension Plan (the "Plan") as it existed on December 6, 2006. Early Retirement-50/25 pension benefits were available to employees who were laid off and, at the time of layoff, were at least 50 years old with at least 25 years of service. The Early Retirement-50/25 pension benefit was based on earned pension credits, but the benefit was reduced by .5% for every month the employee was under age 55 at the time of the layoff. See filing no. 52, at CM/ECF p. 2, ¶ 11(c).

In addition to the Plan's "Early Retirement-50/25" benefit, the Plan also included an "Early Retirement-30" benefit. Unlike the Early Retirement-50/25 provision, under the Plan's Early Retirement-30 provision, employees who were under the normal retirement age of 65, but had 30 years of service with the company, could retire and receive a full, unreduced pension based on their earned pension credits. See filing no. 52, at CM/ECF p. 2, ¶ 11(b).

Windstream recognized that some of the employees scheduled for layoff on April 13, 2007 were nearly eligible, but would not be eligible for any early or normal retirement pension benefits on their scheduled release date unless the Plan was amended.

3

Filing No. 55-3, at CM/ECF p. 8; filing no. 57-4, at CM/ECF p.
11.  These employees included plaintiff Connie L. Nelson
("Nelson"), and Joni L Bates ("Bates"), Nanette M. Boardman,
("Boardman"), Debra J. Grant ("Grant"), Jacqueline M. Schmucker,
("Schmucker"), Mary M. Gilliland, ("Gilliland"), Windie L.
Wolfgang, ("Wolfgang"), and Robin L. Spath ("Spath").  Filing No.
52, at CM/ECF p. 4, ¶ 28; filing no. 57-4, at CM/ECF p. 11.
Bates, Boardman, Grant, Schmucker, Gilliland, Wolfgang, and Spath
are referred to as the "younger employees" in the plaintiffs'
amended complaint, (filing no. 25, at CM/ECF pp. 4-5, ¶¶ 11, 18),
and will likewise be collectively referred to herein as the
"younger employees."  As of April 13, 2007:

- Nelson had worked for Windstream for 29 years and was 49.

- Bates had worked for Windstream for 29 years and was 47;

- Boardman had worked for Windstream for 29 years and was 48;

- Grant had worked for Windstream for 29 years and was 47;

- Schmucker had worked for Windstream for 28 years and was 46;

- Gilliland had worked for Windstream for 28 years and was 48;

- Wolfgang had worked for Windstream for 29 years and was 46; and

- Spath had worked for Windstream for 28 years and was 47.

See filing no. 52, at CM/ECF pp. 1, 4, ¶¶ 1, 28.  Like plaintiffs
Cummins, Rezaian, and Schultz, plaintiff Nelson and the younger
employees had each worked for Windstream for at least 28 years,

4

but none of them could attain the age of 50, or have 30 years of service for Windstream, by their scheduled April 13, 2007 employment termination date.

Windstream amended the Plan, effective January 12, 2007. The amendment was intended to allow employees whose employment was being terminated due to a reduction-in-force, and who were not eligible but would have qualified for benefits had they been allowed to work until December 31, 2008, to received pension benefits immediately upon their termination.  Filing No. 55-2, at CM/ECF p. 4, ¶ 8.  The "Proposal to Accelerate Pension Eligibility For Specified Plan Participants Nearing Retirement," dated December 20, 2006, (filing no. 55-3, at CM/ECF pp. 8-9), was drafted by Robert R. Boyd, ("Boyd"), Vice-President of Benefits for Windstream and a member of Windstream's Benefits Committee.  Filing No. 55-2, at CM/ECF p. 1, ¶¶ 2-3.  Boyd submitted the proposed plan amendment (Amendment No. 2, filing no. 55-3, at CM/ECF pp. 2-6) to Windstream's Benefits Committee. Filing No. 55-2, at CM/ECF p. 2 3, ¶ 7.

Pursuant to the authority granted by Windstream's Board of Directors, the Windstream Benefits Committee approved and adopted Amendment No. 2, with an effective date of January 12, 2007. Filing No. 55-2, at CM/ECF p. 2, ¶ 8.  The resolution was signed by the members of the Windstream Benefits Committee in February of 2007.[2]  The resolution authorized and directed Boyd to finalize and execute Amendment No. 2 of the Windstream Pension Plan.  Filing No. 55-3, at CM/ECF p. 12.  The amendment was signed by Boyd and the Plan was amended on December 20, 2007,

---

[2]Three of the members signed the resolution on February 19, 2007; one signed on February 23, 2007.  Filing No. 55-3, at CM/ECF p. 12.

(filing no. 52, at CM/ECF p. 4, ¶ 24; filing no. 55-3, at CM/ECF p. 6), but the amendment's effective date was January 12, 2007. Filing No. 55-3, at CM/ECF p. 2.  The plaintiffs began receiving pension payments following their layoff on May 1, 2007.  Filing No. 58 (plaintiff's summary judgment brief), at CM/ECF p. 6, ¶ 20; filing no. 61 (defendant's summary judgment opposition brief), at CM/ECF p. 61, ¶ 20.

Amendment No. 2 listed individuals who were laid off on April 13, 2007, but did not list and did not address or modify the retirement benefits owed to plaintiffs Cummins, Rezaian, and Schultz under the Plan.  Plaintiffs Cummins, Rezaian, and Schultz received the Early Retirement-50/25 benefit pursuant to the pre-amendment version of the Plan.  Had Cummins, Rezaian, and Schultz been presumed to work until December 31, 2008, they could have accumulated 30 years of service and would have been eligible for the Early Retirement-30 unreduced pension benefit.  Filing No. 52, at CM/ECF pp. 4-5, ¶¶ 24, 36.

Plaintiff Nelson, and the younger employees were listed in Amendment No. 2 as receiving benefits under the amendment.  As drafted by Boyd, and approved by the Windstream Benefits Committee, the employees specified in Amendment No. 2 received the early retirement benefit for which they would first become eligible if they had continued to work until December 31, 2008. Filing No. 52, at CM/ECF pp. 4-5, ¶ 30; filing no. 55-2, at CM/ECF p. 1, ¶ 6.

Amendment No. 2 stated that plaintiff Nelson would receive the benefits outlined in the Plan's Appendix MM, section 4.02(a)(2).  Filing No. 52-9, at CM/ECF p. 41.  Pursuant to Appendix MM, section 4.02(a)(2), Nelson was allowed to receive

the Early Retirement-50/25 benefit.  Filing No. 52-8, at CM/ECF
p. 36.  Nelson turned 50 after April 13, 2007, but approximately
three weeks before she would have accumulated 30 years of service
for Windstream.  Filing No. 52, at CM/ECF p. 1, ¶ 1.  Therefore,
the early retirement benefit for which Nelson would have first
become eligible had she not been laid off on April 13, 2007, and
been allowed to continue working until December 31, 2008, was the
Early Retirement-50/25 pension benefit.  Had the plan amendment
allowed her to recover benefits assuming she worked until
December 31, 2008, and not limited her to the early retirement
benefit for which she first became eligible following her
termination, Nelson would have received the unreduced pension
benefit afforded to those with 30 years of service.

Pursuant to Amendment no. 2, Bates, Boardman, Grant,
Schmucker, Gilliland, Wolfgang, and Spath were deemed eligible to
receive Early Retirement-30 benefits as outlined in the Plan's
Appendix MM, section 4.02(a)(3).  Filing No. 52-8, at CM/ECF p.
36; filing no. 52-9, at CM/ECF pp. 40-43.  Had each of these
"younger employees" worked until December 31, 2008, they would
have attained 30 years of service with the company before they
turned 50 years of age.  Therefore, the early retirement benefit
for which they would have first become eligible following their
termination was the full, unreduced Early Retirement-30 benefit.

LEGAL ANALYSIS

The plaintiffs' amended complaint, (filing no. 25), seeks
injunctive and monetary relief, reinstatement of benefits,
punitive damages, and attorney fees for defendant's alleged
violations of the Employee Retirement Income Security Act

7

(ERISA), 29 U.S.C. § 1001, et seq., the Age Discrimination in
Employment Act (ADEA), 29 U.S.C. § 621, et seq., and the
Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. §
48-1001 et. seq.   The plaintiffs allege:

> Windstream violated ERISA by:

- Arbitrarily and capriciously reducing plaintiffs'
  retirement benefits, while allowing full benefits to
  the younger employees, in violation of the fiduciary
  duties owed to plan participants under 29 U.S.C. §
  1104;

- Violating 29 U.S.C. § 1102(b)(4) by failing to specify
  the basis on which payments are made from the Plan.

- Failing to follow its procedure for amending the Plan,
  in violation of 29 U.S. C. § 1102(b)(3); and

- Adopting and implementing a Plan amendment that reduced
  the retirement benefits payable to plaintiffs because of
  their age in violation of 29 U.S.C. § 1052(a)(2) and 29
  U.S.C. § 1054(b)(1)(H)(i).

The plaintiffs further claim the defendant violated the
federal and Nebraska Age Discrimination in Employment Acts[3] by
paying the similarly situated younger employees more retirement
benefits than those paid to the plaintiffs.

---

[3]The plaintiffs' brief clarifies that plaintiffs are not
raising a disparate impact claim.  Filing No. 60, at CM/ECF pp.
18-19.  Disparate impact will therefore not be discussed in this
memorandum and order.

A.   ERISA Claims.

1.   Breach of Fiduciary Duty.

"[T]he ERISA scheme envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer." Hickman v. Tosco Corp., 840 F.2d 564, 566 (8th Cir. 1988). ERISA "requires that an employer-fiduciary 'wear the fiduciary hat when making fiduciary decisions.'" Kalda v. Sioux Valley Physician Partners, Inc., 481 F.3d 639, 645 (8th Cir. 2007). An employer engaged in the role of administering the terms of a plan governed by ERISA owes a fiduciary duty to the plan participants. FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 910 (8th Cir. 1994).

However, "[a]n employer's decision to amend . . . an employee benefit plan is unconstrained by the fiduciary duties that ERISA imposes on plan administration." Anderson v. Resolution Trust Corp., 66 F.3d 956, 960 (8th Cir. 1995)(quoting Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1162 (3d Cir. 1990). ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets. Employers are generally free under ERISA, for any reason or at any time, to adopt, modify, or terminate plans that provide pension benefits without being considered as functioning in a fiduciary capacity under ERISA. Lockheed Corp. v. Spink, 517 U.S. 882, 895 (1996); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). An employer's decision to amend a plan to modify or eliminate nonvested benefits is considered a "settlor" function" and is not governed by ERISA's fiduciary standards. Lockheed Corp., 517 U.S. at 890.

9

The plaintiffs seek monetary and injunctive relief for harm allegedly caused by Windstream's violation of fiduciary duties owed to the plaintiffs.  However, the plaintiffs do not allege they were denied full, unreduced retirement benefits because Windstream, as plan administrator, failed to carry out the terms of the Windstream Plan.  Plaintiffs Cummins, Rezaian, and Schultz were over 50 years of age with more than 25 years of experience when their employment was terminated, they were thereby entitled to "Early Retirement-50/25" retirement benefits under the terms of the pre-amendment Plan, and they have received those benefits. Under the terms of Amendment No. 2, plaintiff Nelson was entitled to "Early Retirement-50/25" retirement benefits, and she has received those benefits.  There are no facts to support a claim that Windstream, in its capacity as plan administrator, violated fiduciary duties owed to the plaintiffs by failing to pay pension benefits to the plaintiffs in accordance with the terms of the Plan.[4]

While plaintiffs Cummins, Rezaian, and Schultz were entitled to pension benefits under the pre-amendment Plan, plaintiff

---

[4]Although the plaintiffs cite Metropolitan Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2349 (2008) as binding authority in this case, Metropolitan Life is not applicable to plaintiffs' alleged claims.  Metropolitan Life held that when a plan administrator both evaluates claims for benefits and pays benefit claims, a "conflict of interest" arises, and the courts must consider this conflict in determining if the plan administrator violated its fiduciary duty in denying a plan participant's claim.
The plaintiffs are not, however, claiming Windstream, as plan administrator, violated the terms of the Plan as written. They are claiming Plan Amendment No. 2 should have been more inclusive and written differently.  I therefore need not decide whether Windstream is acting as both the plan administrator and payor of plan benefits and therefore has a conflict of interest in carrying out these roles, and I need not determine the standard of review to apply in determining whether Windstream properly administered and paid benefits owed under the Plan.

Nelson would have received no pension benefit had the Plan not
been amended.  The plaintiffs argue that once Windstream decided
to amend the Plan to afford benefits to long-time employees who
would not otherwise receive a pension benefit, the amendment
should have been written broad enough to deem all the laid off
employees who would have attained 30 years of service by December
31, 2008 eligible for full, unreduced "Early Retirement-30"
benefits.  In other words, the plaintiffs do not claim the Plan
should not have been amended.  They claim the amendment did not
go far enough.  The plaintiffs argue the amendment should have
increased the benefits owed to plaintiffs Cummins, Rezaian, and
Schultz, who were already entitled to Early Retirement-50/25
pension benefits under the pre-amendment Plan, and should have
created an Early Retirement-30, rather than and Early Retirement-
50/25 benefit for plaintiff Nelson.

Windstream was acting in a "settlor function," not as a plan
administrator, when it created and adopted Amendment No. 2.
Windstream's failure to expand, by plan amendment, the early
retirement benefits owed to plaintiffs Cummins, Rezaian, and
Schultz, or to create more extensive benefits for plaintiff
Nelson did not violate any fiduciary duty owed under ERISA.
Hickman v. Tosco Corp., 840 F.2d 564 (8th Cir. 1988)(holding the
defendant employer, who was both the plan sponsor and
administrator, owed no fiduciary duty to the plaintiffs, who were
54-year-old refinery employees terminated when the refinery was
sold, and who were requesting a plan modification allowing them
to receive the full, unreduced retirement benefits owed to 55-
year-old employees with 30 years of service); Anderson v.
Consolidated Rail Corp., 297 F.3d 242, 252 (3d Cir. 2002)(holding
the employer railroad was acting as a settlor, and did not breach
its fiduciary duty when it amended its plan to extend Voluntary

Separation Program benefits to certain ex-employees terminated in
1996, without providing the same benefits to employees terminated
in 1995).

    2.    Failure to Properly Amend the Plan; Failure to Specify
        How Benefits are to be Paid.

The plaintiffs allege Windstream did not properly amend the
Plan before benefit payments under the amendment began because,
under the terms of the Plan, "an amendment adopted without "action
of or pursuant to" the authority of the [Windstream] Board of
Directors is a violation of ERISA."  Filing No. 16, at CM/ECF p.
16.  The plaintiffs then argue that since Amendment No. 2 was not
properly adopted until December 20, 2007, as of May 1, 2007, when
pension benefit payments to the plaintiffs commenced following
their termination, the Plan lacked terms "specify[ing] the basis
on which payments [were] made to and from the plan."  29 U.S.C. §
1102(b)(4).

The court questions whether the plaintiffs have any standing
to raise these issues.  To have standing, the plaintiffs
themselves must have suffered an actual harm, or be facing
imminent harm, by the loss of a legally protected interest; there
must be a causal connection between the injury and the conduct
complained of; and it must be likely that the plaintiffs' injury
will be "redressed by a favorable decision."  Lujan v. Defenders
of Wildlife, 504 U.S. 555, 560 (1992).

Amendment No. 2 did not modify the pension benefits owed to
plaintiffs Cummins, Rezaian, and Schultz.  These plaintiffs are
being paid in accordance with the terms specifying their right to
recover Early Retirement-50/25 benefits as set forth in the pre-
amendment Plan.  Plaintiffs Cummins, Rezaian, and Schultz cannot

12

show their alleged injuries were caused by the allegedly improper
procedure for adopting Amendment No. 2, or the alleged lack of
specificity in that amendment.  Moreover, the pension benefits
owed to plaintiffs Cummins, Rezaian, and Schultz will remain
unchanged if the plaintiff prevails; that is, even if the court
finds Amendment No. 2 was not properly adopted and that it failed
to specify the amounts to be paid to those named in the amendment,
plaintiffs Cummins, Rezaian, and Schultz will still receive Early
Retirement-50/25 benefits.

As to plaintiff Nelson, absent the amendment, she would have
received no pension benefits upon termination.  She has made no
showing that the amendment would have been substantively different
had it been signed by the Board of Directors itself before the
payment of pension benefits commenced, or that she was entitled
to, but deprived of, any legal right to claim that a different,
more lucrative pension benefit should have been created for her
and adopted by the Board.  ERISA does not create any substantive
entitlement to employer-provided pension benefits.  Lockheed
Corp., 517 U.S. at 895.

Although the plaintiffs argue "an amendment reduced to
writing on December 20, 2007 cannot serve as notice to
participants who were affected by the amendment more than six
months earlier on April 13th 2007," (filing no. 58, at CM/ECF p.
17), plaintiffs Cummins, Rezaian, and Schultz were not affected by
the amendment, and plaintiff Nelson was granted, not deprived of
benefits under the amendment.  The plaintiffs cannot show they
were harmed by Windstream's alleged failure to provide proper
notice that the Plan was being amended, properly adopt Amendment
No. 2, or specify how benefits would be paid under the amendment.
See e.g., Godwin v. Sun Life Assur. Co. of Canada, 980 F.2d 323,

328 (5th Cir. 1992)(holding an amendment to an ERISA benefit plan
is valid despite a beneficiary's lack of personal notice, unless
the beneficiary can show active concealment of the amendment, or
some significant reliance upon, or possible prejudice flowing from
the lack of notice.)

Even assuming the plaintiffs have standing, the plaintiffs
cannot prevail on their claims that Windstream failed to properly
amend the Plan and failed to specify the benefits owed.  Plan
fiduciaries must administer an ERISA plan "in accordance with the
documents and instruments governing the plan," (29 U.S.C. §
1104(a)(1)(D)), and make payments to a "beneficiary designated by
a participant, or by the terms of a plan."  29 U.S.C. § 1002(8);
Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001).
Therefore, "[a]bsent a written arrangement specifying how benefits
are to be paid, no ERISA welfare plan exists."  Administrative
Committee of Wal-Mart Stores, Inc. Associates' Health and Welfare
Plan v. Gamboa, 479 F.3d 538, 544 (8th Cir. 2007)(citing 29 U.S.C.
§ 1102(b)(4)).  However, "no single act in itself necessarily
constitutes the establishment of the plan," or an amendment to the
plan.  Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir.
1986)(quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th
Cir. 1982)).  In determining if a plan has been validly created or
amended, the court must determine whether "from the surrounding
circumstances a reasonable person could ascertain the intended
benefits, beneficiaries, source of financing, and procedures for
receiving benefits."  Id.

The Windstream Benefits Committee, acting under the authority
granted by the Windstream Board of Directors, signed a resolution
in February 2007 which authorized Boyd, as Vice President of
Benefits, to finalize and execute Amendment No. 2 and carry out

14

the transactions contemplated by that amendment.  Amendment No. 2 specifically described, by reference to Appendix MM of the Plan, the benefits to be paid to plaintiff Nelson.  Under the undisputed evidence, plaintiff Nelson began receiving pension benefits in accordance with Amendment No. 2 on May 1, 2007.  Although Amendment No. 2 was not formally executed by Boyd until December 20, 2007, the evidence is undisputed that the amendment was adopted by resolution in February 2007 and described, either independently or by reference to the Plan itself, the benefits owed under the amendment, to whom they were owed, that the Plan itself was the funding source, and the procedures to implement benefit payments.  The plaintiffs have failed to show the Plan was not properly amended or that as of the date when benefit payments commenced under the amendment, the amendment lacked sufficient specificity to determine how benefits were to be paid.

  3.   Denying Unreduced Pension Benefits Because of Age in
       Violation of ERISA, the ADEA, and Nebraska's Employment
       Discrimination Law.

  The plaintiffs claim Windstream violated 29 U.S.C. § 1054(b)(1)(H)(i) and  29 U.S.C. § 1052(a)(2) in that the plaintiffs' pension benefit accrual ceased and the plaintiffs were excluded from participation in the Plan because they attained the age of 50.  They also claim Windstream's failure give the plaintiffs "fair credit for their years of service being in excess of some of the [employees listed in Amendment No. 2] and not giving them pension credit to their 30 years of service is violative of Age Discrimination Law both for the state of Nebraska and Federally."  Filing No. 60, at CM/ECF p. 15.  The plaintiffs argue they "were not allowed to accrue the service that the younger employees were."  Filing No. 60, at CM/ECF p. 15.

15

The plaintiffs' age discrimination claims are based on the following evidence:

- The dates of birth and service dates for plaintiffs Cummins, Rezaian, and Schultz.

- The dates of birth and service dates for those employees identified in Amendment No. 2, including plaintiff Nelson and the younger employees;

- The terms of the Plan and Amendment No. 2; and

- Plaintiffs' receipt of Early Retirement-50/25 benefits, rather than the Early Retirement-30 benefits received by the younger employees identified in Amendment No. 2.

The plaintiffs have presented no additional evidence that Amendment No. 2 was "actually motivated" by age.

The court must therefore consider the terms of the Plan, as amended, and determine whether the plaintiffs were treated differently because of age rather than pension status. Kentucky Retirement Systems v. E.E.O.C., 128 S.Ct. 2361, 2370 (2008). Kentucky Retirement illustrates how this determination should be made. In Kentucky Retirement, the EEOC alleged that Kentucky's state disability retirement plan discriminated against older workers by excluding employees who were above "normal retirement age" from receiving disability retirement benefits and by using "normal retirement age" to compute disability benefits in a way that disfavored older workers who had not reached normal retirement age, as compared to younger workers who were identical in all other relevant respects. Specifically, under the Kentucky plan, an employee was entitled to early retirement once he or she had accumulated 20 years of service for the state, or was 55 with five years of service. If a worker under 55 became disabled before he or she had 20 years of state employment, Kentucky's plan

16

imputed enough years of service to the employee's actual years of
service to allow the disabled employee to either have 20 years of
service, or be 55 with 5 years of service, whichever came first.
However, if the employee was already eligible for normal
retirement when the disability arose, no years were imputed in
calculating the disabled employee's retirement benefit.

    The Kentucky Retirement Court explained that under Kentucky's
plan, if an employee with 17 years of service became disabled at
the age of 48, the plan added three years of service and
calculated the employee's retirement benefits based on 20 years of
service.  However, if the employee had already attained the age of
55 with at least five years of service, no additional years were
imputed.  The EEOC claimed Kentucky's plan terms were facially
discriminatory based on age.  The Kentucky Retirement Court
disagreed.

    The Court held:

        Where an employer adopts a pension plan that includes
        age as a factor, and that employer then treats employees
        differently based on pension status, a plaintiff, to
        state a disparate treatment claim under the ADEA, must
        adduce sufficient evidence to show that the differential
        treatment was "actually motivated" by age, not pension
        status.

Kentucky Retirement, 128 S.Ct. at 2370.  Kentucky Retirement
considered six separate factors in determining that the
differential treatment evidenced in Kentucky's plan was based on
pension status, not age.  The Court explained these factors
provide "an indication of what [plaintiffs] might show in other
cases to meet [their] burden of proving that differential
treatment based on pension status is in fact discrimination
'because of' age."  Kentucky Retirement, 128 S.Ct. at 2370.  At

17

least four of the factors discussed in Kentucky Retirement weigh against the plaintiffs in this case.

"[A]s a matter of pure logic, age and pension status remain 'analytically distinct' concepts." Kentucky Retirement, 128 S.Ct. at 2367 (2008) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993)). As explained in Hazen Paper, "[o]n average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer." Hazen Paper, 507 U.S. at 611. However, if a younger employee has worked for a particular employer his or her entire career, while an older worker was more recently hired, the employer's decision to afford plan benefits based on years of service is not "age based" even though the younger employee receives a greater benefit than the older one. Id.

The plaintiffs and the younger employees had all worked for Windstream for at least 28 years.[5] Simple math confirms the younger employees began their jobs with Windstream at an earlier age. Therefore, under the terms of the pre-amendment Plan, unless the younger employees quit or their employment was terminated before they attained 30 years of service, these were going to be eligible for unreduced Early Retirement-30 benefits at a younger age than any of the plaintiffs. Amendment No. 2 may have highlighted the difference in retirement accrual between those who began Windstream employment before the age of 20 and those who began thereafter, but the effect was a mathematical certainty from

_____

[5] Of the plaintiffs, Cummins had worked the longest for Windstream before her job was eliminated, but non-plaintiffs Bates and Boardman, although younger than Cummins, had actually worked for the company longer.

18

the outset of the Plan.  The employees identified in Amendment No.
2 (other than plaintiff Nelson) were under 20 when they began
their Windstream employment.  Even in the absence of Amendment No.
2, and based only years of service, not age, they were all on
course to earn a full, unreduced Early Retirement-30 retirement
benefit before they were 50 years old; further, they would
accumulate more earned service credits toward retirement before
reaching the Plan's normal retirement age of 65 than the
plaintiffs and any other employees who started working for
Windstream after age 20..

Unlike the plaintiffs, the early retirement benefit for which
they were first became eligible under the terms of the Plan
following their April 13, 2007 release was the Early Retirement-30
benefit.  This provision, which affords pension benefits based on
longevity with the company, without any reference to age, is the
source of any disparity in retirement eligibility between the
younger employees and the plaintiffs.  This disparity was not
created by Amendment No. 2.

The distinction between Early Retirement-30 and Early
Retirement-50/25 is carefully and fully set forth in the Plan, not
Amendment No. 2.  Amendment No. 2 merely identified those
employees with more than 28 years of experience who would not, in
the absence of a Plan amendment, receive any retirement benefits
solely because they were too young.  Amendment No. 2 specifically
stated, by employee, which Early Retirement benefit the employee
would receive, and that benefit was based on which Early
Retirement benefit would the employee would have earned first had
she been allowed to continue working to December 31, 2008.  All
the employees with 28 years of experience and released on April
13, 2007, including the plaintiffs, were participants in a Plan

19

that contained Early Retirement-30 and Early Retirement-50/25
provisions.  Therefore, as in Kentucky Retirement, this court is
not considering "an individual employment decision, but a set of
complex system-wide rules [which] involve, not wages, but
pensions--a benefit that the ADEA treats somewhat more flexibly
and leniently in respect to age."  Kentucky Retirement, 128 S.Ct.
at 2367-68.

It is clear from the facts of record that Windstream imputed
years of service to plaintiff Nelson and the younger employees to
treat them as though their employment had been terminated after,
rather than before, their first opportunity to claim Early
Retirement benefits.  As in Kentucky Retirement, age is a factor
in the benefit received only because the Plan permissibly includes
age as a consideration when defining early retirement benefits.
The disparity in the retirement benefit afforded the younger
employees compared to the plaintiffs is a function of pension
eligibility under the Plan terms.  Under such circumstances,
"[t]here is a clear, non-age-related rationale for the disparity
here at issue."  Kentucky Retirement, 128 S.Ct. at 2368.

The eligibility provisions of the Plan, and the Early
Retirement benefits created and assigned in Amendment No. 2, are
not based on stereotypical assumptions that older workers have
less work capacity.[6]  See e.g., Solon v. Gary Community School
Corp., 180 F.3d 844, 852-855 (7th Cir. 1999)(holding that an early

---

[6]In fact, a comparison of the benefits received by the
plaintiffs under the Early Retirement-50/25 provision indicates
the Plan actually includes a financial incentive for employees to
work beyond 50 years of age.  Of the plaintiffs, Rezaian is the
oldest.  Because she was the oldest, her pension benefit will be
reduced by the lowest percentage under the Early Retirement-50/25
pension provision even though, of all the plaintiffs, she was
employed by Windstream for the least amount of time.

retirement incentive plan was discriminatory on its face; the plan allowed employees retiring at age 58 to receive four years of incentive payments, while only allowing two years of incentive payments to those retiring at age 60, and none to those retiring at or after age 62, evidencing the defendant's desire to eliminate workers based on advancing age).  Rather, Windstream assumed all the employees nearing early retirement eligibility, but released on April 13, 2007 before they were eligible, would have continued working until they were eligible for early retirement.  This assumption was applied equally to all such employees, irrespective of age.  Kentucky Retirement, 128 S.Ct. at 2369.

The plaintiffs' early retirement benefits were not reduced or discontinued "on account of the attainment of a specified age" in violation of ERISA.  The plaintiffs benefits were determined by the eligibility requirements of the Plan, and their continued accrual of years of service ceased because they were laid off. Although the Plan's retirement provisions include age as one factor in determining eligibility for early retirement, a plan may provide for retirement ages without violating the ADEA.  See 29 U.S.C. § 623(i)(8)("A plan shall not be treated as failing to meet the requirements of this section solely because such plan provides a normal retirement age . . . ").

Proving age discrimination under the ADEA, (29 U.S.C. § 623(i)(1)(B)), the Nebraska Unjust Discrimination in Employment because of Age Act,[7] and ERISA (29 U.S.C. § 1052(a)(2) & (29 U.S.C. § 1054(b)(1)(H)(i)), requires more than showing that the

---

[7]Nebraska's Age Discrimination in Employment Act, (Neb. Rev. Stat. § 48-1001 et. seq.), is interpreted consistent with the federal ADEA.  Humphrey v. Nebraska Public Power Dist., 243 Neb. 872, 878, 503 N.W.2d 211, 217 (Neb. 1993).  The state act has therefore not been independently interpreted and discussed.

early retirement benefits received by the younger employees
exceeded those received by the plaintiffs.  The plaintiffs must
show the disparity is "because of" age.  The plaintiffs have
failed to show that the employees laid off on April 13, 2007 were
afforded differing early retirement benefits under the Plan
because of age, or that Windstream's act of adopting Amendment No.
2, or failing to adopt an amendment that granted more generous
benefits to all employees laid off on April 13, 2007 who had more
than 28 years of service, including the plaintiffs, was "actually
motivated" by age.


　　　IT THEREFORE HEREBY IS ORDERED:

　　　1.　　The plaintiff's motion for summary judgment, (filing No.
　　　　　　56), is denied.

　　　2.　　The defendant's motion for summary judgment, (filing no.
　　　　　　53), is granted.

　　　3.　　This case is dismissed in its entirety.

　　　4.　　Judgment shall be entered by separate document.


DATED this 16th day of April, 2009.


　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　s/ David L. Piester
　　　　　　　　　　　　　　David L. Piester
　　　　　　　　　　　　　　United States Magistrate Judge